**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JOSE ALBERTO RIVAS TOBAS, *on behalf of himself,*
*FLSA Collective Plaintiffs, and the Class,*

                     Plaintiff,

       v.

K TOWN 32 CORP.
      d/b/a K-TOWN POCHA, and
OK GIL CHO,

                   Defendants.

Case No:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

---

Plaintiff, JOSE ALBERTO RIVAS TOBAS ("Plaintiff"), on behalf of himself and others

similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective

Action Complaint against Defendants, K TOWN 32 CORP. (the "Corporate Defendant"), and OK

GIL CHO (the "Individual Defendant" and, collectively with the Corporate Defendant, the

"Defendants"), and states as follows:

**<u>INTRODUCTION</u>**

1.     Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C.

§§ 201 *et seq.* ("FLSA"), that he and similarly situated individuals are entitled to recover from

1

Defendants: (1) unpaid wages, including overtime, due to time shaving; (2) liquidated damages; and (3) attorneys' fees and costs.

2.    Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time shaving; (2) damages for late payments of wages; (3) liquidated damages; (4) statutory penalties due to violations of the Wage Theft Prevention Act ("WTPA"); and (5) attorneys' fees and costs.

3.    Plaintiff brings additional claims, on behalf of himself and a subclass of employees, under the FLSA, NYLL, New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL"), arising from the deprivation of his and Subclass Members' statutory rights caused by Defendants' discrimination based on (i) their real or perceived immigration status; (ii) alienage/citizenship status; (iii) race; and (iv) national origin. Specifically, Defendants compensated undocumented individuals (and individuals perceived to be undocumented) partially by check and partially in cash, unlawfully deducted $60 from each of their pay, and paid Plaintiff and Subclass Members at a straight-time rate for overtime hours. Such underpayments violate the FLSA and NYLL because they were imposed on Plaintiff and Subclass Members based on their protected status, and also constitute unlawful discrimination under the NYSHRL and NYCHRL.

4.    Plaintiff further alleges that, pursuant to the Internal Revenue Code, 26 U.S.C. § 7434, he and Subclass Members are entitled to damages, fees, and costs in this matter because Defendants willfully filed fraudulent tax information forms with the Internal Revenue Service ("IRS").

5.      Plaintiff further alleges that Defendants breached their contract with Plaintiff and Subclass Members by failing to pay the employer's share of payroll taxes for Plaintiff and Subclass Members, as required by the Federal Insurance Contribution Act ("FICA"). Plaintiff also alleges that, in retaining those sums for themselves, Defendants unjustly enriched themselves at the expense of Plaintiff and Subclass Members.

6.      Plaintiff additionally alleges, on an individual basis, that Defendants unlawfully retaliated against him, in violation of the NYLL, and seeks to recover from Defendants: (1) economic damages, (2) emotional distress damages, (3) punitive damages, and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337, and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because Defendants' restaurant, K-Town Pocha, is located at 34 W 32nd Street, New York, NY 10001, and a substantial part of the events giving rise to the claims herein occurred within this District.

## PARTIES

9.      Plaintiff JOSE ALBERTO RIVAS TOBAS, for all relevant time periods, was a resident of Queens County, New York.

10.     Corporate Defendant K TOWN 32 CORP. d/b/a/ K-TOWN POCHA is a domestic business corporation organized under the laws of the State of New York, with a principal place

3

of business and an address for service of process located at 34 W 32nd Street, New York, NY 10001.

11. Individual Defendant OK GIL CHO is the owner of Corporate Defendant K TOWN 32 CORP. Individual Defendant OK GIL CHO exercised operational control over all employees, including Plaintiff, FLSA Collective Plaintiffs, and the Class. At all relevant times, Individual Defendant, either personally or through management, exercised the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees, including Plaintiff, FLSA Collective Plaintiffs, and Class Members. At all relevant times, employees of Defendants' business could complain to Individual Defendant through management regarding any of the terms of their employment, and Individual Defendant had the authority to effect any changes to the quality and terms of employees' employment, including changing their schedules, compensation, or terminating or hiring such employees. At all relevant times, Individual Defendant OK GIL CHO exercised functional control over Defendants' business and its financial operations.

12. At all relevant times, the Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and the NYLL, with annual gross revenues exceeding $500,000.00.

13. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

14. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt front-of-house and back-of-house employees (including but not limited to, food runners, servers, counterpersons,

hostesses, waiters, bussers, bartenders, porters, cashiers, dishwashers, kitchen staffs, food preparers, delivery persons, cooks, and line cooks, among others) employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case (the "FLSA Collective Plaintiffs").

15.    At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs their proper wages, including their overtime premiums at one and a half times their regular rates for all hours worked over forty (40) in a workweek, due to Defendants' time shaving policy.

16.    The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

17.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first-class mail to the last address known to Defendants.

## **RULE 23 CLASS ALLEGATIONS**

18.    Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt front-of-house and back-of-house employees (including but not limited to, food runners, servers, counterpersons, hostesses, waiters, bussers, bartenders, porters, cashiers, dishwashers, kitchen staffs, food

preparers, delivery persons, cooks, and line cooks, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case (the "Class" or "Class Members").

19.    The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

20.    The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. While the precise number of such persons is presently within the sole control of Defendants, Defendants employ approximately fifteen (15) individuals at their location, and there is no doubt that there are more than forty (40) members of the Class when considering the six-year statutory period.

21.    The Class also includes a subclass consisting of all non-exempt employees of Hispanic descent (the "Subclass" or "Subclass Members"). Plaintiff is a member of both the Class and Subclass. Individual Defendant OK GIL CHO subjected every member of the Subclass to the same discriminatory policies.

22.    Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class Members were subjected to the same corporate practices by Defendants, as alleged herein, of Defendants' failure to: (1) pay wages, including overtime, due to time shaving; (2) provide timely payments of wages; (3) provide proper wage

6

and hour notices on their dates of hiring and annually thereafter, per requirements of the New York Labor Law; and (4) provide proper wage and hour statements, per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures of Defendants.

23.     With regard to the Subclass, Defendants subjected Plaintiff and the Subclass to discriminatory policies due to (i) their real or perceived immigration status; (ii) alienage/citizenship status; (iii) race; and (iv) national origin, in violation of the NYCHRL and NYSHRL. Defendants additionally deprived Plaintiff and Subclass Members of overtime wages (in violation of the FLSA and NYLL); willfully filed fraudulent tax information forms with the IRS (in violation of the IRC); unlawfully deducted $60 from each of their pay; and failed to pay employer taxes for Plaintiff and Subclass Members (thereby breaching their contracts with Plaintiff and Subclass Members).

24.     Plaintiff is both able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

25.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without

the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

26.    Defendants and other employers throughout the State of New York violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

27.    There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class Members, including:

a)   Whether Defendants employed Plaintiff and the Class within the meaning of the New York Labor Law;

b)   What were and are Defendants' policies, practices, programs, procedures, protocols, and plans regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c)   At what common rate, or rates subject to common methods of calculation, were Defendants required to pay Plaintiff and Class Members for their work;

d)   Whether Defendants properly notified Plaintiff and the Class Members of their hourly rates and overtime rates;

e)   Whether Defendants properly compensated Plaintiff and Class Members for all hours worked, including overtime hours;

f)   Whether Defendants provided Plaintiff and Class Members with weekly compensation, as required under the NYLL;

g)   Whether Defendants failed to pay employee payroll taxes for Plaintiff and Subclass Members;

h)   Whether Defendants filed fraudulent tax information forms with the IRS with respect to Plaintiff and Subclass Members;

i)   Whether Defendants discriminated against Subclass Members due to their Hispanic descent;

j)   Whether Defendants paid Plaintiff and Subclass Members at a straight-time rate;

k)   Whether Defendants provided proper wage statements informing Plaintiff and Class Members of their proper overtime rates of compensation and other information Defendants were required to provide them on their wage statements, as provided under the New York Labor Law; and

l)   Whether Defendants provided Plaintiff and Class Members with proper wage and hour notices, on their dates of hiring and annually thereafter, per requirements of the New York Labor Law.

**STATEMENT OF FACTS**

i.    *Plaintiff's Employment Background*

28.    In or around October 2023, Plaintiff JOSE ALBERTO RIVAS TOBAS was hired by Defendants to work as a Cook and Dishwasher at Defendants' K-Town Pocha, located at 34 W 32nd Street, New York, NY 10001. Plaintiff was employed by Defendants until on or about January 2026, at which point Defendants terminated Plaintiff's employment in retaliation for his complaints regarding Defendants' discrimination.

29.    At all relevant times, Defendants scheduled Plaintiff to work the following schedule, for a total of sixty (60) hours per week:

| Day of Week | Scheduled Shift | Total Scheduled Hours |
|---|---|---|
| Tuesday | 5:00 PM – 2:00 AM | 9.00 |
| Wednesday | 5:00 PM – 2:00 AM | 9.00 |
| Thursday | 5:00 PM – 2:00 AM | 9.00 |
| Friday | 4:00 PM – 4:00 AM | 12.00 |
| Saturday | 4:00 PM – 4:00 AM | 12.00 |
| Sunday | 5:00 PM – 2:00 AM | 9.00 |

30.    At all relevant times, Defendants scheduled FLSA Collective Plaintiffs and Class Members to work similar numbers of hours per week.

31.    From the start of his employment to December 2024, Plaintiff was paid by Defendants at an hourly rate of $16.00. From January 2025 to August 2025, Plaintiff was paid by Defendants at an hourly rate of $16.50. From September 2025 to December 2025, Plaintiff was paid by Defendants at an hourly rate of $18.50. From January 2026 to the end of his employment, Plaintiff was paid by Defendants at an hourly rate of $17.00. At all relevant times, Defendants paid FLSA Collective Plaintiffs and Class Members at similar rates.

ii. *Unpaid Wages Due to Time Shaving*

32.    At all relevant times, Defendants failed to pay Plaintiff, FLSA Collective Plaintiffs, and Class Members their proper wages for all hours they worked, due to Defendants' policy of time shaving, in violation of the FLSA and the NYLL.

33.    Defendants required Plaintiff, FLSA Collective Plaintiffs, and Class Members to clock in and out at the beginning and end of their shifts, and remain on the clock for their thirty (30) minute meal breaks. Plaintiff was routinely required to perform compensable work during those meal break periods, including by washing dishes, making sauces, and cutting and maintaining meats. However, even though Plaintiff worked through all his meal breaks, Defendants automatically deducted thirty (30) minutes from each of his workdays. Plaintiff learned of Defendants' automatic meal break deductions from his manager, John [LNU], who informed Plaintiff that thirty (30) minutes of pay were deducted from each workday. FLSA Collective Plaintiffs and Class Members were likewise deprived of wages for all hours worked, as Defendants required them to work through their shifts without bona fide, uninterrupted meal breaks while automatically deducting thirty (30) minutes of supposed meal time each day.

34.    Moreover, despite always working around sixty (60) hours per week, Plaintiff's paystubs only reflected between forty (40) and forty-five (45) of those hours. As a result, much of Plaintiff's overtime hours went uncompensated. Similarly, FLSA Collective Plaintiffs and Class Members received paychecks which did not account for all hours worked, due to time shaving.

35.    Defendants knowingly and willfully operated their business with a policy of failing to pay wages to Plaintiff, FLSA Collective Plaintiffs, and Class Members for all hours they worked as a result of Defendants' time-shaving policy, in violation of the FLSA and the NYLL.

11

*iii.*    *Late Payment of Wages*

36.    At all relevant times, Defendants failed to timely compensate Plaintiff and Class Members, in violation of the NYLL.

37.    Plaintiff and Class Members are manual workers. As a cook and dishwasher in a Korean restaurant, Plaintiff spent his workdays preparing ingredients, cooking and plating dishes, washing dishes, cleaning kitchen equipment and work areas, and restocking supplies—work that was physically demanding. Class Members similarly engaged in manual labor for significant periods of their workdays.

38.    Due to their status as manual workers, Plaintiff and Class Members are entitled to weekly compensation. However, Defendants frequently failed to pay Plaintiff and Class Members on time, instead issuing compensation approximately one to two weeks after the designated pay date. This delayed payment caused Plaintiff and Class Members to struggle to timely pay bills.

39.    Defendants knowingly and willfully operated their business with a policy of failing to provide timely compensation to Plaintiff and Class Members, in violation of the NYLL.

*iv.*    *WTPA Claims*

40.    Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff, FLSA Collective Plaintiffs, and Class Members with proper wage notices and accurate wage statements, in violation of the NYLL.

41.    At all relevant times, Plaintiff and Class Members never received wage notice from Defendants. They also did not receive accurate wage statements from Defendants.

42.    In failing to provide wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303

12

(2d Cir. 2024), Courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

43.    New York Courts continue to find sufficient standing to support standing to support these claims.  One such Court stated the following at Summary Judgment:

> "Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue."

*Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, *61 (S.D.N.Y. February 23, 2026) (internal citations removed).

44.    Here, Defendants' conduct has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez.* By failing to inform Plaintiff and Class Members of the actual hours that they worked by not providing them with wage statements, Defendants were able to hide their wrongdoing, as Plaintiff and Class Members were unaware of the fact that they were being underpaid. Had Defendants provided proper wage statements to Plaintiff and Class Members which accurately listed the total number of hours Plaintiff and Class Members actually worked, and their earned wages, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked.

45.     By failing to report Plaintiff's and Class Members' hours, Defendants were able to reduce employee earnings, and Defendants' contribution to those earnings, that they later reported to the IRS through the employees' W-2 form, as such information is derived from the information on employees' wage statements. The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of benefits available to the employee—such as unemployment benefits and social security benefits—as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff and Class Members were irreversibly injured with respect to their benefits (including social security benefits)—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

46.     Furthermore, Defendants failed to provide any wage notices to Plaintiff or Class Members. Even if Defendants' provided wage notices, the wage notices would have been inadequate as they would have failed to provide employees' actual pay rates, which were reduced by Defendants' time shaving.  Once again, had Defendants provided Plaintiff and Class Members with wage notices that communicated the rates that Defendants actually intended to pay them, Plaintiff and Class Members would have been able to contest the unfair pay rates or choose not to take a job with Defendants. Instead, due to Defendants intentional hiding of that information, Plaintiff and Class Members accepted their employments with Defendants without the knowledge that Defendants did not intend to be bound to their promised pay rates.

47.     Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff, FLSA Collective Plaintiffs, and Class Members with proper wage notices and accurate wage statements, in violation of the NYLL.

*v.  Plaintiff's and Subclass Members' Discrimination Claims*

48.     Plaintiff and Subclass Members are of Hispanic descent. Defendants' K-Town Pocha is owned and managed by Individual Defendant OK GIL CHO.

49.     While working for Defendants, Plaintiff and Subclass Members were subject to discrimination based on their race, national origin, and immigration status.

50.     In or around January 2026, during Plaintiff's final month of employment, Defendants began compensating Plaintiff partly by check and partly in cash. Plaintiff's regular hours were paid by check, while his overtime hours were paid in cash at an improper straight-time rate. In addition, Defendants deducted $60.00 in cash from each pay period, purportedly for taxes. Around this time, Subclass Members faced the same deductions and change in compensation, receiving no overtime premiums despite working over forty (40) hours each week.

51.     Defendants intentionally targeted this wage policy at Plaintiff and Subclass Members based on their perceived unlawful immigration status. Approximately one week after the policy was implemented, Plaintiff asked Individual Defendant OK GIL CHO why he was not being properly paid. Individual Defendant OK GIL CHO responded, "Because you are illegal and undocumented." Plaintiff observed that the policy was not applied to employees perceived as U.S. citizens or lawful residents, but only to Plaintiff and Subclass Members, who were Hispanic and perceived to be illegal immigrants.

52.     Upon information and belief, Individual Defendant OK GIL CHO, the owner, engaged in discriminatory treatment of Plaintiff and Subclass Members, who are vulnerable persons protected under the NYSHRL and NYCHRL based on their perceived immigration status and/or Hispanic descent.

15

53.    By failing to provide Plaintiff and Subclass Members with overtime premiums for all hours worked over forty (40) each week from January 2026 onward, Defendants additionally violated the FLSA and NYLL.

54.    As a result of Defendants' discriminatory conduct, Plaintiff and Subclass Members sustained injury, including economic damages and past and future egregious emotional distress.

### vi.    *Fraudulent Filing Claims*

55.    At all relevant times, Defendants intentionally and willfully subjected Plaintiff and Subclass Members to a policy of filing fraudulent tax information on their behalf, in violation of FICA.

56.    Beginning in or around January 2026, Defendants implemented a policy of paying Plaintiff and Subclass Members both by check and in cash.

57.    Defendants failed to properly record, account for, and report to the IRS all monies paid to Plaintiff and Subclass Members. In failing to account for these monies in their IRS filings, Defendants failed to file proper W-2 forms in violation of 26 U.S.C. § 7434. Under 26 U.S.C. § 7434(b), Defendants are liable for statutory penalties for each Subclass Member for each fraudulent filing, which would occur at least once per year.

### vii.    *Breach of Contract and Unjust Enrichment Claims*

58.    In violating the Internal Revenue Code by failing to provide proper W-2 forms, Defendants also breached their contract with Plaintiff and Subclass Members to pay the employer's share of Social Security and Medicare taxes for each employee.

59.    Defendants also unjustly enriched themselves at the expense of Plaintiff and Subclass Members by retaining monies that should have been remitted to the IRS on behalf of Plaintiff and Subclass Members.

16

60.    As a result, Plaintiff and Subclass Members will either (1) be liable to the IRS for the employer's share of FICA taxes or (2) upon retirement, suffer diminished Social Security and Medicare benefits because they did not pay enough into the system.

61.    The employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiff and Subclass Members 7.65% of all their earnings from Defendants for 2026.

62.    Defendants are liable to Plaintiff and Subclass Members for failing to pay FICA taxes for the wages earned by Plaintiff and Subclass Members.

viii.    *Plaintiff's Individual Retaliation Claims*

63.    During the last month of his employment with Defendants, Plaintiff made multiple complaints about Defendants' discriminatory straight-time policy and Defendants' unlawful $60.00 deductions from pay. Plaintiff made such complaints to Individual Defendant OK GIL CHO. When Plaintiff made his final complaint to Individual Defendant OK GIL CHO in or around January 2026, he fired Plaintiff in retaliation.

64.    Defendants' sudden termination of Plaintiff was clearly for retaliatory reasons arising from Plaintiff's complaint about underpayment resulting from discrimination. Any other asserted reasons for Plaintiff's termination are clearly pretextual.

65.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of subjecting Plaintiff to discrimination and retaliation.

66.    As a result of Defendants' retaliatory conduct, Plaintiff suffered lost earnings and egregious emotional distress.

17

67.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation, and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM
### COUNT I
### VIOLATION OF THE FAIR LABOR STANDARDS ACT
**(On Behalf of Plaintiff and FLSA Collective Plaintiffs)**

68.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

69.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

70.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

71.     At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.00.

72.     At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs their proper wages, including overtime, due to time shaving.

73.     At all relevant times, Defendants had a policy and practice of failing to provide Plaintiff and Subclass Members with overtime premiums, due to a straight-time pay policy.

74.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records

18

by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

75. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to pay Plaintiff and FLSA Collective Plaintiffs their proper wages, including overtime premiums, when Defendants knew or should have known such was due.

76. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

77. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

78. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable, including unpaid wages, overtime wages, and liquidated damages.

79. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II
## VIOLATION OF THE NEW YORK LABOR LAW
### (On Behalf of Plaintiff and Class Members)

80. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

81. At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

82. Defendants willfully violated Plaintiff's and Class Members' rights by subjecting them to a policy of time shaving.

83. Defendants willfully violated Plaintiff's and Class Members' rights by failing to timely pay them their full weekly wages, as required by NYLL § 191(a)(1).

84. Defendants willfully violated Plaintiff's and Subclass Members' rights by failing to provide them with overtime premiums, due to a straight-time pay policy.

85. Defendants failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

86. Defendants failed to provide Plaintiff and Class Members with proper wage and hour notices on their dates of hiring and annually thereafter, per requirements of the New York Labor Law § 195(1).

87. Defendants failed to provide Plaintiff and Class Members with proper wage statements with every payment as required by New York Labor Law § 195(3).

88. Due to Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid regular and overtime wages, damages for late payments of wages, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements of this action, pursuant to the New York Labor Law.

## COUNT III
### VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW
(NEW YORK EXECUTIVE LAW § 296)
(Brought on Behalf of Plaintiff and Subclass Members)

89. Plaintiff realleges and incorporates all the foregoing paragraphs of this Complaint as if fully set forth herein.

90. Plaintiff and Subclass Members were employees and qualified persons within the meaning of the NYSHRL. Defendants are covered employers under the NYSHRL.

20

91.     In relevant part, New York Executive Law § 296(1)(a) states it shall be an unlawful discriminatory practice:

> "For an employer or licensing agency, because of an individual's  [...] race, creed, [...] national origin, citizenship or immigration status, [...] to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

92.     In relevant part, New York Executive Law § 296(1)(h) further states it shall be an unlawful discriminatory practice:

> "For an employer, licensing agency, employment agency or labor organization to subject any individual to harassment because of an individual's [...] race, creed, [...] national origin, citizenship or immigration status, [...] or because the individual has opposed any practices forbidden under this article [...]. Such harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in one or more of these protected categories."

93.     Defendants violated the New York State Human Rights Law when they discriminated against Plaintiff and Subclass Members on the basis of their race, national origin, and immigration status. In particular, Defendants discriminated against Plaintiff and Subclass Members in numerous ways, including but not limited to: (i) depriving Plaintiff and Subclass Members of overtime premiums; (ii) unlawfully deducting $60 from each of Plaintiff and Subclass Member' pay and (ii) compensating Plaintiff and Subclass Members partially by check and partially in cash.

94.     Defendants' conduct was intentional, malicious, willful, or in reckless disregard of Plaintiff's protected rights under the NYSHRL.

95.     As a result of Defendants' discriminatory conduct, Plaintiff suffered egregious emotional distress.

96.    As a result of Defendants' unlawful employment practices under the NYSHRL, Plaintiff and Subclass Members sustained injury, including economic damages, past and future emotional distress, and the costs of bringing this action.

97.    Due to Defendants' violations of the NYSHRL, Plaintiff and Subclass Members are entitled to recover from Defendants: (1) economic damages; (2) compensatory damages; (3) punitive damages; (4) damages for egregious emotional distress; and (5) attorneys' fees, expert fees, and costs.

## COUNT IV

### VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW
### (NEW YORK CITY ADMINISTRATIVE CODE § 8-107)
### (Brought on Behalf of Plaintiff and Subclass Members)

98.    Plaintiff realleges and incorporates all the foregoing paragraphs of this Complaint as if fully set forth herein.

99.    At all relevant times herein, Plaintiff and Subclass Members were employees of Defendants and qualified persons within the meaning of the NYCHRL, and Defendants are covered employers under the NYCHRL.

100.    In relevant part, Administrative Code of the City of New York § 8-107(1)(a) states it shall be an unlawful discriminatory practice:

> "For an employer or an employee or agent thereof, because of the actual or perceived [...] race, creed, [...] national origin, [...] or immigration or citizenship status of any person: [...]
>
> > (3) To discriminate against such person in compensation or in terms, conditions or privileges of employment"

101.    Defendants violated Plaintiff's and Subclass Members' statutorily protected rights under the NYCHRL, Administrative Code of the City of New York § 8-107, by discriminating against Plaintiff and Subclass Members on the basis of their national origin and real or perceived

22

immigration status in violation of the NYCHRL, by subjecting Plaintiff and Subclass Members to intentionally discriminatory policies as set forth above.

102. Defendants violated the New York City Human Rights Law when they discriminated against Plaintiff and Subclass Members on the basis of their race, national origin, and immigration status. In particular, Defendants discriminated against Plaintiff and Subclass Members in numerous ways, including but not limited to: (i) depriving Plaintiff and Subclass Members of overtime premiums; (ii) unlawfully deducting $60 from each of Plaintiff and Subclass Member' pay; and (iii) compensating Plaintiff and Subclass Members partially by check and partially in cash.

103. As a result of Defendants' discriminatory conduct, Plaintiff suffered egregious emotional distress.

104. Defendants' conduct was intentional, malicious, willful, or in reckless disregard of Plaintiff's and Subclass Members' protected rights under the NYCHRL.

105. As a result of Defendants' unlawful employment practices under the NYCHRL, Plaintiff and Subclass Members sustained injury, including economic damages, past and future emotional distress, and the costs of bringing this action.

106. Due to Defendants' violations of the NYCHRL, Plaintiff and Subclass Members are entitled to recover from Defendants: (1) economic damages; (2) compensatory damages; (3) punitive damages; (4) damages for egregious emotional distress; and (5) attorneys' fees and costs.

## COUNT V

### RETALIATION UNDER THE NEW YORK LABOR LAW
**(Brought Individually on Behalf of Plaintiff)**

107. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

108.    At all relevant times, Plaintiff was an employee of Defendants within the meaning of the NYLL, and was a person covered by and intended to benefit from the provisions of the NYLL.

109.    Defendants willfully violated the NYLL by retaliating against Plaintiff by discharging him for making numerous complaints about Defendants' failure to provide overtime wages and their discriminatory compensation practices.

110.    Defendants' actions constitute a violation of Section 215 of the NYLL. In relevant part, NYLL § 215(1)(a) states:

> No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, or any order issued by the commissioner.

111.    Defendants' conduct was in willful disregard of the provisions of the NYLL.

112.    Plaintiff suffered economic losses and emotional and mental distress as the result of his retaliatory termination by Defendants.

113.    As a direct and proximate result of Defendants' willful disregard of the NYLL, Plaintiff suffered damages in the form of lost earnings. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interest, attorneys' fees, and costs, as provided for under the NYLL.

## COUNT VI

## CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS
## UNDER 26 U.S.C. § 7434(a)
## (Brought on behalf of Plaintiff and the Subclass)

114.    Plaintiff realleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

115.    Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

116.    By purposely failing to provide Plaintiff and Subclass Members with accurate IRS W-2 forms for 2026 and failing to properly record, account for, and report to the IRS all monies paid to Plaintiff and Subclass Members as wages, Defendants filed fraudulent information returns with the IRS, in violation of 26 U.S.C. § 7434.

117.    Defendants knew they had a legal duty not to misrepresent to the IRS the amount of money they were paying employees. Defendants' actions were willful violations of, or showed reckless disregard for, the provisions of the Internal Revenue Code.

118.    Pursuant to 26 U.S.C. § 7434(b)(3), Defendants are also liable to Plaintiff for reasonable attorneys' fees.

## COUNT VII

## BREACH OF CONTRACT
## (Brought individually and on behalf of the Subclass)

119.    Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein and further alleges as follows:

25

120.    "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance … This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract … [T]he duties of good faith and fair dealing … encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *511 W. 232nd Owners Corp. v. Jennifer Realty Co*., 98 N.Y.2d 144, 153, 746 N.Y.S.2d 131, 135-136, 773 N.E.2d 496, 500-01 (2002).

121.    When Plaintiff and Subclass Members accepted offers of employment from Defendants, the parties entered into contracts, and the covenant of good faith and fair dealing implicit therein required Defendants to pay Plaintiff and Subclass Members in accordance with all applicable laws. This involved, *inter alia*, a duty to abide by the Internal Revenue Code and pay all required FICA taxes.

122.    Defendants breached this duty when they decided to pay Plaintiff and Subclass Members partially by check and partially in cash, without filing proper W-2 forms. As a result, Plaintiff and Subclass Members lost part of the benefit of the bargain for which they contracted, suffering a loss in the amount of the FICA taxes that Defendants should have paid on their behalf but did not.

## COUNT VIII

### UNJUST ENRICHMENT
### (Brought individually and on behalf of the Subclass)

123.    Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein and further alleges as follows:

124.    To state a claim for unjust enrichment, a plaintiff must allege that: "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good

26

conscience to permit the [defendant] to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v. Rieder*, 19 NY3d 511, 516, 973 NE2d 743, 950 NYS2d 333 (2012) (internal quotations omitted).

125.    Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants' employer FICA contributions. This came at the expense of Plaintiff and Subclass Members because they will either (1) be liable to the IRS for the employer's share or (2) upon retirement, suffer diminished Social Security and Medicare benefits because they did not pay enough into the system.

126.    Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff and Subclass Members.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c.    An award of unpaid wages, including overtime, due to time shaving, owed under the FLSA and the NYLL;

d.    An award of unpaid overtime wages, due to a straight-time pay policy, owed under the FLSA and the NYLL;

e.    An award of interest and legal fees as a result of Defendants' willful failure to pay Plaintiff and Class Members timely on a weekly basis as required under the NYLL;

f.    An award of statutory damages to Plaintiff and each Subclass Member under 26 U.S.C. § 7434 for each violation;

27

g. Contractual damages for Defendants' failure to keep their promise to abide by the Internal Revenue Code and fund Plaintiff's and Subclass Members' retirement through FICA contributions;

h. Disgorgement from Defendants of all illegally retained sums that should have gone into FICA contributions;

i. An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

j. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

k. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to the NYLL;

l. An award of compensatory damages, punitive damages, and damages for egregious emotional distress, due under the NYSHRL;

m. An award of compensatory damages, punitive damages, and damages for egregious emotional distress, due under the NYCHRL;

n. An award of economic damages, emotional distress damages, and punitive damages as a result of Defendants' retaliation against Plaintiff, due under the FLSA;

o. An award of economic damages, emotional distress damages, and punitive damages as a result of Defendants' retaliation against Plaintiff, due under the NYLL;

p. An award of pre-judgment and post-judgment interest, costs, and expenses of this action together with reasonable attorneys' and experts' fees and statutory penalties;

q. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

r. Designation of this action as a class action pursuant to F.R.C.P. 23;

s. Designation of Plaintiff as Representative of the Class;

t. Designation of Plaintiff as Representative of the Subclass; and

u. Such other and further relief as this Court deems just and proper.

### JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable as of right by jury.

Dated: July 31, 2026
     New York, New York

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181

*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

By:    /s/ *C.K. Lee*
        C.K. Lee, Esq.